## Brodie v. City of Pittsburgh.

*M. Leon Tolochko,* for petitioner.

*Charles A. Waldschmidt,* City Solicitor, and *Oscar T. Taylor,* Assistant City Solicitor, for respondent.

REID, J., July 2, 1930.—Upon the facts averred in the petition (and hereafter stated) the above cause came on for argument, the City of Pittsburgh not being represented by counsel. Thereupon an order was made and entered of record directing that the municipal lien referred to in the petition be stricken from the record. Thereafter the City of Pittsburgh asked to be heard, and submitted a brief on the law of the case, in which it is urged that the lien referred to had not been divested. If such be the law, the order made striking it off should be revoked.

The following are the material facts quoted from the petition. They are not controverted, and, accordingly, are accepted as true, viz.:

"The municipal lien in question was for the sum of $208.53, against the property owned by your petitioner, and was entered on April 25, 1927 at

No. 29 July Term, 1927 in the Prothonotary's Office of Allegheny County, Pennsylvania. The petitioner's premises then owned by Elizabeth Annie Payne and William J. Payne, Jr., were sold at sheriff's sale to your petitioner's predecessor in title for $1115.58, which sum was distributed by the sheriff as follows:

"To costs in full on this writ............................. $234.63
To Walter J. Christry, Collector, 1927 county taxes........ 78.29
To Wallace Borland, Collector, 1927, city, school and water
    taxes .......................................... 404.55
To Wallace Borland, Collector, 1928, city, school and water
    taxes .......................................... 398.11
                                                        ——————
                                                       $1115.58

"The proper authorities of the City of Pittsburgh failed to file with the sheriff any claim for the aforementioned municipal tax and the proceeds were used for the payment of 1927 county tax, 1927 and 1928 city, school and water taxes."

The City of Pittsburgh contends that the facts stated do not warrant the order prayed for (and, as above stated, already made by the court). The brief filed in its behalf does not attack the petitioner's authorities, which support the principle that where a fund sufficient to pay tax liens is produced at a judicial sale and the proper application of the fund be not made to such liens in the order of the priority, they are divested.

The city insists, under the provisions of the Act of May 16, 1923, P. L. 207, that so far as municipal claims or liens are concerned, they are not divested unless the fund be sufficient to first pay all outstanding tax liens and municipal claims in full.

In other words, it contends that the application of the funds in the sheriff's hands to the taxes for the years 1927 and 1928 was proper, and, therefore, that the municipal lien in question was unaffected by the sale and yet binds the property in the hands of the purchaser.

The pertinent sections of the Act of May 16, 1923, are as follows:

"Section 2. All taxes . . . shall be . . . a first lien on said property; . . . and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate . . . save and except only the costs of the sale and of the writ upon which it is made.

"Section 3. All municipal claims . . . shall be . . . a lien on said property; . . . and said liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien or estate . . . save and except only the costs of the sale and the writ upon which it is made, and the taxes imposed or assessed upon said property."

"Section 31. . . . nor shall the lien of a tax or municipal claim be divested· by any judicial sale of the property liened, as respects so much thereof as the proceeds of such sale may be insufficient to discharge; . . . On any such sale being made all tax claims shall be paid out of the proceeds thereof: first, the oldest tax having priority; and municipal claims shall be paid next, the oldest in point of lien having priority. . . ."

Under the act above quoted, taxes as such are clearly given priority of municipal liens. There can be no doubt as to the meaning of the paragraphs to which we have referred. The taxes are definitely given priority and must

be fully paid before municipal claims or liens can attach to the fund in the hands of the sheriff. The result of this is that the payment by the sheriff to the collectors, shown in the special return, to the exclusion of the municipal lien in question, was in entire accordance with the law. That lien was on record, requiring no notice by anyone of its existence and not being divested by payment out of the fund in the hands of the sheriff by reason of the fact that insufficient money was realized to pay the amount in question, the result is it still attaches to the property and must be eventually paid as an undivested lien.

The order heretofore made striking off the lien must be revoked.

### Order.

And now, July 2, 1930, after hearing and upon consideration, it is ordered that the order of court heretofore made, dated June 16, 1930, striking from the record the lien of the municipal claim at No. 29, July Term, 1927, Municipal Lien Docket, be and the same is hereby revoked and the said lien is now hereby reinstated.

From William J. Aiken, Pittsburgh, Pa.